# Intrasession Recess Appointments

The President may make appointments under the Recess Appointments Clause during an intrasession recess of the Senate that is of substantial length A 33-day summer recess is of sufficient length to permit the President to make recess appointments.

An officer appointed under the Recess Appointments Clause during an intersession recess may serve until the end of the next session of Congress after the recess.

5 U.S.C. § 5503 does not prohibit salary payments to a recess appointee whose nomination a committee refused to send to the full Senate and whose nomination was not returned to the President prior to an adjournment.

August 3, 1989

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This memorandum responds to your request that this Office determine whether the President can make appointments under the Recess Appointments Clause, Article II, Section 2, Clause 3 of the Constitution, during the impending intrasession recess of the Senate, which we understand will extend from August 4 to September 6, 1989. The question arises because a committee failed, by an even vote, to recommend confirmation of a nominee and then refused to send the nomination to the floor for consideration by the full Senate. You asked us to address four discrete issues: (1) whether the President can appoint someone during a recess of 33 days; (2) when during the recess the President may make such an appointment; (3) how long the recess appointee may serve; and (4) whether one who has been subject to such committee action may receive his salary under 5 U.S.C. § 5503, which prohibits Treasury disbursements to pay salaries of recess appointees until they are confirmed by the Senate unless, inter alia, "at the end of the session" the nomination was "pending before the Senate for its advice and consent." We discuss each issue in turn.

We conclude that the President is authorized to make intrasession recess appointments during a recess of substantial length, and we believe that the 33 days of this recess would be of sufficient length to permit the President to make recess appointments. Such appointments could be made at any time during the recess, but ideally would be made as early as possible in the recess. Appointees could serve until the end of the next session of Congress after the recess. Finally, we conclude that 5 U.S.C. §

271

5503 would not prohibit salary payments to a recess appointee whose nomination a committee refused to send to the full Senate and whose nomination was not returned to the President prior to adjournment.

## I. CONSTITUTIONAL ANALYSIS

### A. *Length of Recess Necessary for Appointment*

Article II, Section 2, Clause 3 of the Constitution provides: "The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session." The Department of Justice has long interpreted the term "recess" to include intrasession recesses if they are of substantial length. In 1921, Attorney General Daugherty held that the President had the power to make appointments during an intrasession recess of the Senate lasting from August 24 to September 21, 1921. 33 Op. Att'y Gen. 20 (1921). The opinion concluded that there was no constitutional distinction between an intersession recess and a substantial adjournment during a session. It held that the constitutional test for whether a recess appointment is permissible is whether the adjournment of the Senate is of such duration that the Senate could "not receive communications from the President or participate as a body in making appointments." *Id.* at 24 (quoting S. Rep. No. 4389, 58th Cong., 3d Sess. (1905); 39 Cong. Rec. 3823 (1905) (statement of Sen. Spooner)). Attorney General Daugherty admitted that by "the very nature of things the line of demarcation cannot be accurately drawn." *Id.* at 25. But, he concluded:

> the President is necessarily vested with a large, although not unlimited, discretion to determine when there is a real and genuine recess making it impossible for him to receive the advice and consent of the Senate. Every presumption is to be indulged in favor of the validity of whatever action he may take.

*Id.*

Attorney General Daugherty's opinion was cited and quoted with approval by the Comptroller General in 28 Comp. Gen. 30, 34-36 (1948), and reaffirmed by Acting Attorney General Walsh in 1960 in an opinion on an intrasession summer recess lasting from July 3 to August 8, 1960. 41 Op. Att'y Gen. 463, 468 (1960). In 1979, this Office reaffirmed the opinions of Attorney General Daugherty and Acting Attorney General Walsh, 3 Op. O.L.C. 314, 316 (1979), and, in 1982, again reaffirmed Acting Attorney General Walsh's opinion, 6 Op. O.L.C. 585, 588 (1982).

Acting on this advice, Presidents frequently have made recess appointments during the traditional summer and election intrasession recesses,

which typically last for about one month.[1] Recently this Office advised that recess appointments could be made during a 24-day intrasession summer recess.[2] Ultimately, resolution of the question whether an adjournment is of sufficient duration to justify recess appointments requires the application of judgment to particular facts. Given past practice, however, a recess of 33 days is clearly long enough to permit a recess appointment.

## B. When the Appointment Can Be Made

Given that the rationale for treating substantial intrasession adjournments as "recesses" for purposes of the Recess Appointments Clause is that substantial adjournments prevent the Senate from acting on nominations, one might expect that the appointment must be made early in the recess. Nonetheless, there appears to be no authority for such a proposition and, indeed, in 1983, this Office advised that a recess appointment could be made at 11:30 a.m. on the day the Senate was to reconvene at 12:00 noon after a 38-day recess. See Memorandum for the Files, from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel (Oct. 19, 1983). Despite the apparent lack of adverse precedent, however, it would seem prudent to make any appointment as early in the recess as possible.

## C. Duration of the Recess Appointment

The duration of the recess appointment depends on the meaning of the term "next session" in the Recess Appointments Clause. It is clearly established that the "End of their [the Senate's] next Session" is not the end of the meeting of the Senate which would begin when the Senate returns from its adjournment, but rather the end of the session following the final adjournment of the current session of Congress. See 41 Op. Att'y Gen. at 469-70. Because the current session of Congress is the first session of the 101st Congress, a recess appointment made during one of its intrasession recesses would not expire until the end of the following session. This would be the second session of the 101st Congress, which will probably end in late 1990.

## II. STATUTORY ANALYSIS

Although the President has the constitutional power to make appointments during the intrasession recess of the Senate, 5 U.S.C. § 5503 pro-

---

[1] See, e g., 41 Op Att'y Gen. 463, 468 (1960), 33 Op. Att'y Gen. 20 (1921); 6 Op. O.L.C. 585, 588 (1982); 3 Op O.L.C. 314, 316 (1979)

[2] Memorandum for the Files from Herman Marcuse, Attorney-Adviser, Office of Legal Counsel (July 6, 1984). This Office has cautioned against a recess appointment during an 18-day intrasession recess Memorandum for the Files from Herman Marcuse, Attorney-Adviser, Office of Legal Counsel (Jan. 28, 1985).

hibits the payment of salaries to recess appointees, with certain exceptions. Section 5503 provides:

> (a) Payment for services may not be made from the Treasury of the United States to an individual appointed during a recess of the Senate to fill a vacancy in an existing office, if the vacancy existed while the Senate was in session and was by law required to be filled by and with the advice and consent of the Senate, until the appointee has been confirmed by the Senate. This subsection does not apply —
>
>> (1) if the vacancy arose within 30 days before the end of the session of the Senate;
>>
>> (2) if, at the end of the session, a nomination for the office, other than the nomination of an individual appointed during the preceding recess of the Senate, was pending before the Senate for its advice and consent; or
>>
>> (3) if a nomination for the office was rejected by the Senate within 30 days before the end of the session and an individual other than the one whose nomination was rejected thereafter receives a recess appointment.
>
> (b) A nomination to fill a vacancy referred to by paragraph (1), (2), or (3) of subsection (a) of this section shall be submitted to the Senate not later than 40 days after the beginning of the next session of the Senate.

The vacancy for which the individual in question was nominated did not arise within 30 days before the end of the session; nor would subsection (a)(3) apply with respect to the individual in question, since it only applies if a different person is recess appointed than the one who was nominated prior to the recess. The question, therefore, is whether the nominee satisfies the requirements of subsection (a)(2).[3] The critical inquiry under this subsection is whether a nomination a committee has

---

[3] Section 5503(a)(2) requires that the nomination have been pending "at the end of the session." We believe that the term "at the end of the session" refers to the end of any period during which Congress is conducting business, not solely to the final adjournment of a formal session of Congress *See* Memorandum for the Attorney General, from John O McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, *Re. Recess Appointments* at 8-9 (July 7, 1988) The Comptroller General has agreed with our conclusion that Congress did not intend the statutory term "session" to be read narrowly to refer only to the formal sessions of Congress: "the term 'termination of the session' [has] ... been used by the Congress in the sense of any adjournment, whether final or not, in contemplation of a recess covering a substantial period of time " 28 Comp Gen. 30, 37 (1948).

refused to report favorably to the full Senate and refused to send to the floor is still "pending before the Senate for its advice and consent."[4] To our knowledge there is neither caselaw nor relevant legislative history on this specific question. We believe, however, that a nomination must be regarded as having been "pending before the Senate" if, under any circumstance, the Senate could have acted on the nomination. Under this common- sense interpretation, a nomination that was not reported out of committee, and which was neither acted upon by the full Senate following an order of discharge nor returned to the President by the Senate, would have been "pending before the Senate" at the end of the session.

The Senate has the inherent power to discharge from a committee any matter it wishes including nominations as recognized by Senate Rule XVII 4(a). Thus, any nomination that a committee refused to vote out for floor consideration would have been subject to discharge and consideration by the full Senate. Given this, we believe that such a nomination would have been "pending before the Senate" for purposes of section 5503(a)(2).

Senate Rule XXXI clearly supports this interpretation of the term "pending before the Senate." Under this rule, there are two circumstances in which the President must resubmit a nomination if it is to be considered: (1) where a nomination has been voted on by the full Senate and rejected, and (2) where a nomination has been returned. In both circumstances, the President is notified, either by notification of the vote, or by his receipt of the returned nomination. The rules of the Senate nowhere state or even suggest that the President must resubmit a nomination not reported out, and there is no provision for notifying the President that he must do so. The clear inference from this rule is that a nomination that a committee refuses to report to the floor, but that has not been returned to the President, remains pending before the Senate.

The Senate rules provide that "at the time of taking [an] adjournment" for more than 30 days, all nominations are to be returned to the President and will not be reconsidered unless resubmitted by him. Senate Rule XXXI(6).[5] It might be argued that upon return to the President under this rule, a nomination is no longer pending before the Senate. Even were this the case, however, a recess appointee whose nomination the committee

---

[4] Under a similar provision in the annual Treasury Department and Postal Service appropriations bill, compensation is prohibited when the Senate, as opposed to a particular Senate committee, has voted not to approve a nomination Section 606 of the appropriations bill provides: "No part of any appropriation for the current fiscal year contained in this or any other Act shall be paid to any person for the filling of any position for which he or she has been nominated after the Senate has voted not to approve the nomination of said person " Treasury, Postal Service and General Government Appropriations Act of 1989, Pub L. No 100-440, § 606, 102 Stat. 1721, 1752 (1988). Because the full Senate has not voted on the nomination at issue, this provision is clearly inapplicable

[5] Senate Rule XXXI(6) provides that nominations "neither confirmed nor rejected during the session at which they are made" and nominations "pending and not finally acted upon *at the time of [an] adjournment or recess* [of more than 30 days] shall be returned by the Secretary to the President" and will not be reconsidered unless resubmitted by the President (Emphasis added )

refused to report out to the full Senate and whose nomination was returned pursuant to the rule would not be prohibited from receiving compensation under section 5503. Since nominations may be returned pursuant to rule XXXI only if they were "pending ... at the time of ... adjournment or recess" from session, any nomination returned pursuant to the rule would necessarily have been returned *after* the end of the session, and thus would have been pending *at* the end of the session. Thus, the subsection (a)(2) requirement that the nomination have been "pending at the end of the session" would be satisfied.

In sum, we do not believe that the committee's split vote on the nominee or the return of the nomination pursuant to Senate Rule XXXI would alter the status of the nomination as "pending before the Senate for its advice and consent" "at the end of the session" for purposes of section 5503. Therefore, subsection (a)(2) would permit a recess appointee to be paid a salary during the pendency of his recess appointment.[6]

## III. CONCLUSION

We conclude that the President may exercise his power under the Recess Appointments Clause during the August 1989 recess. We also conclude that when a Senate committee has voted not to send a nomination to the floor, and the Senate has not discharged the nomination from committee or returned it to the President prior to adjournment, the nomination was "pending before the Senate for its advice and consent" for purposes of 5 U.S.C. § 5503(a)(2), and thus the recess appointee would not be prohibited from being paid a salary during the course of his recess appointment.

J. MICHAEL LUTTIG
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[6] If the statute were to preclude the President from paying a recess appointee in these circumstances, it would raise serious constitutional problems because of the significant burden that an inability to compensate an appointee would place on the textually committed power of the President to make recess appointments *See Public Citizen v United States Department of Justice*, 491 U.S. 440, 482 (1989) (Kennedy, J., concurring).